# J. W. ALTENBURG v. COMMONWEALTH.

ERROR TO THE COURT OF QUARTER SESSIONS OF CRAWFORD
COUNTY.

Argued May 11, 1889—Decided May 27, 1889.
[To be reported.]

1. The general provisions of the license act of May 13, 1887, P. L. 108,
   are designed to regulate the sale of liquors by the various classes of
   venders known to the law, not to interfere with the use of liquors by the
   individual citizen, or with his right to furnish them to his family, or to
   his guests.
2. But the provisions of § 17 of the act, prohibiting the furnishing of
   liquors by sale, gift, or otherwise, on election day, on Sunday, to one of
   known intemperate habits, or to one visibly affected by intoxicating
   drink, are not confined to dealers, but are directed against " any person,
   with or without license."
   (a) On the trial of an indictment charging the defendant with having
   furnished liquors to persons at the time visibly affected by intoxicating
   drink, the commonwealth offered evidence of the offence committed on
   various days in 1887 and 1888, among which were several Sundays in
   1888.
   (b) The defendant objected and pleaded specially the record of his trial
   and acquittal upon another indictment for the offence of selling liquors
   on Sunday, covering the Sundays in 1888 as to which the same evidence
   had been offered as was offered on the trial of the indictment at bar.
3. The evidence having been admitted, and the jury having found for the
   commonwealth on the special plea, it was error not to instruct the jury
   on the general issue, (a) that the evidence submitted on the plea of for-
   mer acquittal should not be considered as before them on the question of
   the guilt or innocence of the defendant, and (b) that the defendant ought
   not to be convicted upon the evidence of acts done on the several Sun-
   days covered by the first indictment.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 436, 437 January Term 1889, Sup. Ct.; court below, No. 44 September Term 1888, Q. S.

At September Term 1888, the grand jury returned as true bills three indictments preferred against John W. Altenburg, a farmer; one, charging him with the offence of selling liquors on Sunday; another, in four counts charging him with furnishing liquor to men of known intemperate habits; and a third, in four counts charging him with furnishing liquor to men visibly affected with intoxicating drink. The defendant was tried upon the indictment for selling liquors on Sunday, to No. 45 September Term 1888, and acquitted.

At February Term 1889, the defendant was tried upon the indictment for furnishing liquor to men of known intemperate habits and acquitted, when the third indictment was called, to which the defendant pleaded, not guilty.

At the trial of this last indictment on February 11, 1889, Belma Clark was called by the commonwealth; the witness had gone to live with the defendant on April 23d, and left the last of May, 1888.

Q. Within that time, state how many times and on what days of the week, whether Sunday or any other day, that David Knightlinger and other persons, if so name the other persons, were at his house and got something to drink?

The defendant objected, and filed a special plea,

That at No. 45 September Sessions 1888, in the Court of Quarter Sessions of Crawford county, the defendant was indicted for furnishing liquor on Sundays between the 8th day of September, 1887, and the 8th day of September, 1888, and that on the trial of said cause defendant was acquitted, and as to the dates and days above given, to wit: all Sundays between the 8th day of September, 1887, and the 8th day of September, 1888, the defendant pleads former acquittal.

Commonwealth: Q. Will you state if at any time between the 23d of April, 1888, and the last of May, 1888, certain men came to Altenburg's house in Troy township, while you were there, and what took place as to their drinking?

Defendant objects, because at any time implies Sunday and

Saturday, and for the reason that the defendant was tried at the last Court of Quarter Sessions for furnishing liquor between the dates mentioned in the counsel's question, and was acquitted. I object to it unless the evidence is confined to other days than Sundays.

By the court: We overrule the objection for the reason that the question whether the defendant was convicted or not, under the pleadings of the case is a question of fact for the jury, and in order to enable them to know they must know what the witness then testified to, and what she now testifies to; exception.[1]

The witness testified that the defendant furnished intoxicating cider to men visibly affected thereby at different times on week-days, on Saturday and on Sunday.

Q. I wish you to state, you have given one Saturday and one Sunday, state how many different Sundays they were there?

Defendant's counsel object to any evidence upon Sundays, for the reason that the defendant was tried at the last Quarter Sessions for the furnishing on Sunday and was acquitted by the jury.

By the court: We overrule the objection for the reason that this is an issue of fact now trying, and we must identify the times, as one of the necessary inquiries; exception.[2]

Q. How many other days? A. I could not say exactly.

A number of other witnesses were called by the commonwealth, and testified, under exception to the defendant, to the same effect.

Other witnesses testified also to an occurrence on July 2, 1888, when the defendant with certain persons named in the indictment were in Titusville, where they threw together money and bought a case of beer which was taken to Altenburg's, and there consumed by the party, some of whom were visibly affected, etc. The commonwealth rested.

The defendant then put in evidence the record of the indictment and trial and acquittal, to No. 45 September Term 1888, and the notes of the testimony given by Belma Clark and other witnesses on the trial thereof. The case then closed upon the issue raised by the special plea, and the parties went to the jury.

The court, HENDERSON, P. J., charged the jury upon this issue as follows:

The defendant pleaded not guilty to the various counts in this indictment, and, in addition to the plea of not guilty, filed a plea which is known in the law as a plea in bar, as a denial of the right of the commonwealth to prosecute at all, because of the fact that the defendant was formerly tried for the same offence, tried on the same facts now set up in this indictment, and was acquitted; and, therefore, by reason of the protection which the constitution gives to every man against a second trial for the same offence, he ought not now to be put upon trial at all. And the question which you are now to determine, as a preliminary question, is the truth or the untruth of the plea set up by the defendant.

You are not now to inquire whether the defendant is guilty or not of the offence charged in the indictment. That is not before you. [The single question which you are now to determine by a verdict, either in favor of the commonwealth or the defendant, is whether the defendant has ever been heretofore tried on the facts now set up by the commonwealth, on the trial of this case. It is not a question as to the weight which . you are to give to the evidence offered by the commonwealth, tending to show the guilt of the defendant of the fact charged in the indictment. That comes afterwards, if you find your verdict on this special count in favor of the commonwealth. You will observe, therefore, gentlemen, the single inquiry for you to make is, was the defendant ever tried on the facts now set up by the commonwealth, and relied upon for his conviction in this case. And you are to determine that by considering the evidence now offered of the fact charged in the former indictment, and the evidence there offered in support of it.] [4]

The indictment is for furnishing intoxicating drinks to persons visibly affected by intoxicating drinks. The offence charged in the former indictment, which was tried, was for furnishing liquor to persons on Sunday. The indictments charged distinct offences. There is no connection between the offences charged in the two indictments. Unless, therefore, the evidence now offered on the trial of this case, and material to the determination of this question of the guilt or innocence of the defendant on this indictment, was not com-

petent evidence on the trial of the indictment for furnishing liquor on Sunday, your verdict should be for the commonwealth. In other words, if the commonwealth has now offered evidence tending to show that the defendant has furnished intoxicating drinks to the persons named, which evidence could not have been admitted on the trial of a person for furnishing liquor on Sunday, then the commonwealth is entitled to a verdict. And that leads you to the consideration of the question of what evidence has been offered. You will recollect the testimony of Washington Proper, Mrs. Proper, Mrs. Hotchkiss, Charles Wilkins, Harrison Sutton, Frank Sutton, and the other witnesses, tending to show occurrences in which the defendant participated, happening on other days than Sunday. The weight you are to give that evidence is another consideration, gentlemen. As to whether you shall subsequently find that the liquor furnished was intoxicating liquor, as to whether the persons to whom it was furnished, if you find it was furnished, were visibly intoxicated at the time it was furnished, are inquiries that are not now material. The inquiry for you is whether the facts proved by the commonwealth are the same facts competent on the trial for furnishing liquor on Sunday.

The court instructs you that all the evidence tending to show the furnishing cider or other liquors by the defendant, on other days than Sunday, to any of the persons named in the indictment, is evidence which could not have been offered on the trial of the indictment for furnishing liquor on Sunday. That other indictment charged a specific offence, the gravamen of which was that the defendant, on the Sabbath day, furnished liquor to various persons. If it had appeared on the trial of that case that liquor was furnished Monday, Tuesday, or any other day of the week except Sunday, the evidence would not have been competent evidence. It might have tended to establish the fact that the defendant furnished liquor to some person, but if it did not appear that it was done on Sunday, the evidence would go for nothing. You see, therefore, that evidence that tends to show furnishing liquor to persons visibly affected with intoxicating liquor on week-days is evidence which would not have been admissible on the trial of the case for furnishing liquor on Sunday, and therefore, is directed towards a different offence. If, therefore, you find the facts

Charge of Court below.

offered by the commonwealth relate to a different day than Sunday, the commonwealth is entitled to a verdict on this preliminary issue.

If you should find a verdict for the commonwealth on this preliminary issue, then you come back into the box, and try the case on as to whether the defendant was guilty of furnishing intoxicating drinks to persons who at the time the drinks were so furnished, were visibly intoxicated. [If you understand the instructions of the court, you will perceive your inquiry is whether the evidence now offered by the commonwealth relates to transactions on other days than Sundays, the charge for selling on Sunday having been tried at the former court.] [5]

If you believe the testimony of Washington Proper, Mrs. Proper, Mrs. Hotchkiss, the Messrs. Sutton, and others, the facts testified to by them relate to other days than Sunday, and were, therefore, not material or pertinent on that trial.

Counsel for the defendant asks us to say:

1. That the issue to be tried by the jury, is whether or not the facts specially pleaded in the special plea are true, and not whether the facts set forth in the indictment are true.

Answer: The issue you are trying is the issue as to whether there has been a former acquittal of the defendant on the facts now relied upon by the commonwealth for the conviction of the defendant. [6]

2. That under all the evidence in this case touching the special plea, to wit: the plea that defendant was tried to No. 45 September Sessions 1888, in the Court of Quarter Sessions of Crawford county, for furnishing liquor on Sunday between the 8th day of September, 1887, and the 8th day of September, 1888, and that on that trial the defendant was acquitted of the said offence, their verdict must be for the defendant.

Answer: This point is refused. [7]

You may retire for the consideration of this question, and after you find a verdict for the commonwealth, or for the defendant, on this preliminary question, you will return and if that verdict is for the commonwealth, then we proceed to try the defendant on the general issue of guilty or not guilty.

The jury returned a verdict for the commonwealth, on the special plea.

The defendant then offered in evidence the record of the indictment and trial of No. 45 September Term 1888, together with the verdict of not guilty.

Objected to, as irrelevant.

By the court: .The evidence does not seem to be competent. Offer overruled; exception.[8]

The defendant was then called in his own behalf, and testified that what he gave to the persons named in the testimony and had been drunk by them at his house, was cider which he had prepared for the use of himself and his family and anybody that had a mind to drink it, and that it was not intoxicating; that the time the party went to Titusville and got the beer, it was the last day of haying, and his hired hands and himself had joined and bought the beer together; the hands had made the arrangement, and he hadn't much to do with it, only paying his share of the expense; that one of the hands had got a bottle of whiskey on his own motion, and he first knew of it on the way home.

Defendant's counsel then offered in evidence the indictment in No. 45 September Sessions 1888; also, verdict of the jury in that case, not guilty; to be followed by testimony of the witness on the stand that the testimony adduced by the commonwealth on the trial of that case for selling on Sunday was the same offered in this case for selling on Sunday; that the Sundays mentioned in the indictment were the same Sundays referred to by the witnesses on the part of the commonwealth in this case; this for the purpose of showing that the question of selling on Sunday had already been determined in favor of the defendant, and to ask the court to withdraw that part of the evidence from the jury.

Commonwealth's counsel objected for the reason that it was not responsive to the present issue trying, and because the issue that it was responsive to had already been determined by the jury, and the records showed that it had been decided in favor of the commonwealth.

By the court: I know of no legal aspect of the case in which it is competent. I can readily see that it might be desirable to have the fact established, but the only way for the defendant to avail himself of former jeopardy is by pleading. If you can satisfy a jury or the court, where the matter is of record, that

Charge of Court below.

the fact is as the plea, you have your discharge. Otherwise, you have to try on the general issue. Offer overruled; exception.[10]

The case was then closed upon the testimony, when the court, HENDERSON, P. J., charged the jury, saying, inter alia:

Whether the defendant is guilty or not in this case is a question of fact which must be determined by you. The facts are for you. You are the judges of both the law and the facts as applicable to this case.

The beverages alleged to have been furnished by the defendant, are cider and beer. It is shown by the commonwealth, through the testimony of Mrs. Proper, Miss Clark, Mrs. Hotchkiss, and other witnesses, perhaps, that some of the persons named in the indictment, . . . . . obtained cider from Altenburg from time to time, at his house; that whereas, they came to the house apparently sober, after remaining there a time, and drinking some of this cider, they became intoxicated.

The question as to whether the cider was intoxicating or not, gentlemen, you are to determine from the effect which it produced on the human system. There is no legal standard to determine whether a given beverage is intoxicating or not. An intoxicating beverage is one which intoxicates, which makes one drunk, which if taken in sufficient quantities produces that effect.

\* \* \* \* \* \* \* \*

The material evidence in addition to that relating to cider is that offered by the commonwealth with reference to the use of beer, the beer used the night when the defendant and others came from Titusville, when they drank on the road. It is alleged by the commonwealth that the defendant in that instance undertook to, and did make Peter Rhodes drink beer when he was drunk, and when he was trying to resist the effort to induce him to drink; and that the defendant on that occasion, during the trip from Titusville, was instrumental in procuring Peter Rhodes to drink beer. Whether he did or not, is a question to be determined by you. You have heard the evidence on both sides, and it was fully commented upon by counsel for the commonwealth and the defence.

If one offer to another drink, while that other is intoxicated,

he violates the law. No man in Pennsylvania, as the law now stands, has any right to treat a man who is drunk or visibly intoxicated. He has no right to give him drink, and no right to furnish him the means of drinking. The evidence upon that point you must dispose of.

The other evidence offered by the commonwealth was that relating to the use of beer at the barn of Altenburg. If the persons who are named here "chipped in," as the phrase goes, and bought the beer, the defendant would probably not be liable. If the defendant, as claimed by the commonwealth, bought the share of beer that Proper was to have; if he furnished the beer and charged it up to Proper in the settlement of his account, he might be liable for furnishing the beer to Proper. If he loaned Proper the money which went into the beer, he would not be liable. What the fact was as to that, you must determine for yourselves.

\*          \*          \*          \*          \*          \*          \*          \*

The jury returned a verdict that on three of the counts the defendant was not guilty; on the fourth count, guilty. A rule for a new trial having been discharged, the defendant was sentenced to pay a fine of $50 and to undergo an imprisonment in the county jail for twenty days. He then took this writ, assigning as errors:

1, 2. The admission of plaintiff's offers.[1] [2]
4, 5. The portions of the charge embraced in [ ] [4] [5]
6, 7. The answers to the defendant's points.[6] [7]
8, 10. The refusal of defendant's offers.[8] [10]

*Mr. H. J. Humes* (with him *Mr. R. C. Frey* and *Mr. A. B. Richmond*), for the plaintiff in error.

*Mr. Pearson Church* (with him *Mr. J. D. Roberts*, District Attorney), for the defendant in error.

OPINION, MR. JUSTICE WILLIAMS:

The defendant below was not the keeper of a hotel or restaurant, but a farmer. He was indicted and put on trial for furnishing spirituous, vinous, malt, or brewed liquors to persons visibly affected by intoxicating drink. The indictment was

drawn under the act of 1887 known as the high license law, which makes it a misdemeanor to furnish liquors by gift, sale, or otherwise, to persons visibly affected.

It is true that the general provisions of the act of 1887 relate to and are designed to regulate the sale of liquors by the various classes of venders known to the law. They are not directed against the use of such liquors by the individual citizen, and they do not interfere with his right to supply his table with them, or furnish them to his family, or his guests. But when he goes beyond this limit, he goes beyond the protection to which a citizen as such is entitled, and his acts become a subject of police interest and control. The 17th section of the act of 1887, provides that it shall not be lawful " for any person, with or without license, to furnish by sale, gift, or otherwise, to any person any spirituous, vinous, malt, or brewed liquors," on any election day, on Sunday, nor at any time to any minor, person of known intemperate habits, or person visibly affected by intoxicating drink. This provision is not confined to dealers but is directed against " any person." The thing forbidden is not the sale, but the furnishing of liquors to one visibly affected. Whether the furnishing be by " gift, sale or otherwise " is of no consequence, so far as the misdemeanor is concerned. The licensed dealer may sell to all persons except those who belong to the excepted classes. A man without a license may give liquors in like manner, but to the excepted classes no man may lawfully sell or give.

The defendant was charged with having furnished liquors to persons who were at the time visibly affected by intoxicating drink, in other words, visibly intoxicated, and to whom therefore it was unlawful either to sell or give, or in any manner to furnish such liquors. The commonwealth offered evidence for the purpose of showing that the defendant had furnished liquors to persons visibly affected on various days in 1887 and 1888, and among these were several Sundays in 1888. The defendant's counsel objected to the evidence relating to the Sundays in 1888, alleging as a reason for such objection that the defendant had been indicted, tried, and acquitted upon the general charge of furnishing liquors on Sunday during that year. He alleged that the evidence had been actually made use of on the former trial, and necessarily passed upon

by the jury; and that a verdict acquitting him of the charge of furnishing to any person on these Sundays covered the charge upon which he was now being tried, as to the same Sundays. Without insisting on the objection, and making the necessary proof to the court, the defendant filed, by leave of the court, an informal plea of former acquittal, and went to the jury on the issue so raised. But the offences charged in the two indictments were different. He had been tried and acquitted upon an indictment charging him with furnishing liquors on Sunday. He was now on trial for furnishing to persons visibly affected. Upon the plea of former acquittal the jury found for the commonwealth and we do not see how they could have done otherwise.

The trial then proceeded on the plea of not guilty, and there was evidence enough, independently of that which related to the Sundays of 1888, to justify the jury in finding a verdict of guilty. But the evidence relating to those Sundays was before the jury, and it is impossible for us now to tell whether their verdict rests upon the proof that was properly before them, or on that which had been passed upon on the former trial. The defendant's counsel offered the record of the indictment and acquittal which they gave in evidence on the plea of former acquittal, as a defence under the plea of not guilty, as to the days covered by it, but it was excluded by the court. They then asked the court to instruct the jury that in determining the guilt or innocence of the defendant they must not consider the evidence made use of or that might properly have been made use of on the trial of the former indictment. This the court declined. The result was that the defendant failed to secure in any manner the benefit of his former trial and acquittal, and may, for anything that it is possible for us to gather from this record, have been convicted for furnishing liquors to a person visibly affected on a Sunday in 1888, notwithstanding his acquittal at the previous term of furnishing to any person on those days.

This is due largely to the manner in which the question was raised by the plea of former acquittal. It is probable that the better way would have been to stand on his objection to the evidence, and make his showing to the court, or if the question was to be raised by plea, it should have been by pleading spe-

cially, in addition to the general issue, the former indictment, trial, and acquittal, as a defence to so much of the present indictment as covered the days included in the former. If the fact so pleaded were found to be as alleged, then the defendant was entitled to the benefit of it. The gist of the offence charged in the first indictment was the furnishing of liquors on a prohibited day; that in the second was the furnishing to members of a prohibited class. The first verdict determined that he furnished liquors to no one on the Sundays of 1888. This included the prohibited classes as well as others, and he ought not now to be called upon to defend himself again from the charge of furnishing on those days. Notwithstanding the manner in which the defendant raised the question by his plea of former acquittal, we think the court should have taken care that the defendant was not convicted improperly. The jury should have been distinctly advised that the evidence of sales submitted to them on the plea of former acquittal, should not be considered by them on the general question of the guilt or innocence of the defendant; and, as the fact of the former acquittal was brought to the attention of the court, although not perhaps in the most regular manner, the jury should have been told that the defendant ought not to be convicted upon proof of acts done on the several Sundays which were covered by the first indictment.

It is suggested by counsel for the plaintiff in error, that there is an important constitutional question involved in this case, and they say in reference to it, " We claim the act of May 13, 1887, does not authorize the conviction of a farmer or private citizen for giving cider or beer to his hired help or neighbors, in a social way, while calling at his house, and if the law does go that far it is unconstitutional." It is a sufficient reply to this suggestion that the question is not raised in this case. We incline to the opinion, as we have already said, that a citizen may use on his own table or in his own house just such beverages as he pleases. That is a matter of private habit or of domestic usage, with which the act of 1887 does not intermeddle. It is only when the conduct of the individual is such that the public morals or the public peace are affected by it, that it becomes a matter of public concern and is subject to the examination and control of the criminal courts. Now, the proper

observance of the Sabbath, in the judgment of the law-making powers in all Christian governments, has an effect upon public morals.   The wheels of commerce stop on that day in obedience to the law, and the traffic in intoxicating drinks is suspended.   If a licensed dealer cannot be allowed to furnish persons with such drinks on Sunday, surely an unlicensed citizen can give no reason why he should be allowed to do so.   So, the furnishing of drink to one already visibly intoxicated is a matter of public concern.   The law does not restrain a man's private indulgence in drink.   It does take notice of public drunkenness.   If one has already passed the line of sober self-control, all men licensed or unlicensed must take notice of it and regulate their conduct accordingly.   They must not furnish, by sale, gift or otherwise, the further supply of drink that may turn the excited man into an unreasoning brute.   Such restrictive provisions, like the laws regulating the sale of poisons and of fire arms, are properly within the range of a wise exercise of the police power and ought to be faithfully enforced.

The act of 1887 is not directed against the making or use of cider by the farmer.   He may both make and use it as he will. He can have it on his table or in his field.   That is his personal privilege.   But when he allows men to assemble in his barn or about his premises who are visibly intoxicated, and he sells or gives to them intoxicating liquors while in that condition, his conduct affects not himself or his family merely, but his neighbors and the public, and becomes a subject of investigation and punishment under the provisions of the act of 1887.

Judgment reversed, and venire de novo awarded.